Good afternoon, your honors. May it please the court. My name is Derrick Wallen. I represent defendant and appellant Robert Wolf. I would like to reserve four minutes of my time for rebuttal. You'll have to keep track of your time, but you certainly may try to do your honor. Thank you. This is an appeal from an order of the district court denying Mr. Wolf's special motion to strike a libel complaint against him under California's anti-slap statute. The underlying action is a collateral tort suit against opposing counsel. Mr. Wolf represents concierge, a defendant in a separate lawsuit that Mr. Appel has filed in the Southern District of California. Collateral suits against opposing counsel, such as this one, are disfavored under California law for various important policy reasons. Counsel, let me get right to the heart of the piece of this case that is of concern to me, and that is the extent of the litigation privilege that covers a letter such as the one that's at issue here. And my concern is whether the allegedly libelous material is related to the litigation and what is the California rule about that. Suppose I'm involved in litigation with 25 counsel in a big case, and I send a letter that says my client is willing to kick in $500,000 toward the settlement of this case, and I hope we can discuss it next week. And then there's a new paragraph that says, and by the way, I noticed that your son has been convicted of counterfeiting and is off to jail. Ha ha. Is that second paragraph privileged or protected in any way from a libel action? Yes, Your Honor. The entire communication would be privileged and protected under both the litigation privilege and the anti-slap statute. That seems very bizarre to me, and it may be the law in California, but it strikes me that it really permits any totally outrageous and libelous statements to go unanswered if they are simply appended to something that has to do with litigation, no matter how completely unrelated. And is that really California law? And when you answer Judge Graber's question, I'd like you to discuss the case of Nguyen, N-G-U-Y-E-N, where a defendant in a case involving whether he was stealing or, in other words, trying to get employees from another person and run for a competition, and the allegation was in the so-called settlement offer that he was the wife, which had really nothing to do with the employment situation. That case has been cited and has been followed in California for the proposition that where the libelous matter is totally unrelated to the substance of the litigation, which is involved in the settlement discussions, it is not protected by the litigation privilege. Could you discuss that, please? Absolutely. So to take the Nguyen v. Proton technology case first, I agree with your description of the case. However, in that decision, the California Court of Appeal was specifically focused on the limits of the litigation privilege as it might apply to pre-litigation statements. It's how the Court of Appeal framed the decision in the very first sentence of that case. It's that we're concerned with the extent to which the litigation privilege might apply to pre-litigation statements. Here, we are not in the pre-litigation world. Mr. Appell's complaint alleged and conceded that the email in question took place after Mr. Appell's dispute with concierge auctions was formalized in a lawsuit. So I think Nguyen v. Proton technology is distinguishable first on that basis and also on the content of the communication that gave rise to that lawsuit. The Court of Appeal in that case seemed to be responding to the specific, rather outrageous facts of that decision where the former employer falsely stated that the plaintiff had been in prison for violently beating his wife, which turned out not to be true at all. Well, the factual question aside, it seems to be your position in response to my hypothetical appears to me it doesn't matter how false and how outrageous because King's X, once you file a lawsuit, you can say anything and no matter how unrelated and all you have to do is have a sentence in there about the litigation and you're home free. Well, California courts have consistently held that settlement letters are within a class of communications to which the Sure, but the question is what happens when the settlement discussion has attached to it or within it something entirely unrelated? And I know you have an argument about whether it is or isn't unrelated, but I'm trying to get at the principle that you want us to apply and I take it your position is it can be outrageously false, defamatory and unrelated, but if it is in a settlement letter, there can be no defamation action that lies. Is that your position? That is my position, your honor. And as to this point, I would direct the court to the case of Home Insurance Company versus Zurich Insurance Company, which was a 2002 case. Not a defamation case, but... In that case, count, misrepresentation was that the statutory limits, recoverable, were misrepresented. So that misrepresentation went directly to the subject matter of the lawsuit in question. It did, your honor. But what the Court of Appeal had to in that case is that really, regardless of how outrageous or improper the communication might be, the public policy in favor of creating a large, expansive zone of protection around settlement communications merits, per se, protection of letters directed towards settlement, as this one was. And certainly... Mr. Wallen... Mr. Wallen... I apologize, Judge Baird. Go ahead, please. How I see Mr. Wolf's communication that Howard Appell had issues in securities was he was using that as part of a settlement lever to tell the attorneys for Appell that their client was a crook, to not be believed by them. This is a very effective way of getting the attorneys for the plaintiff, Appell, in the mood for settling less. So you see, I see a certain amount of malice, of forethought in Mr. Wolf's statement regarding Mr. Appell. He had the wrong one, but he threw it out there. It had nothing to do with the litigation in question. It was only for the purpose of deprecating the character and credibility of Mr. Appell before his own counsel. Well, Your Honor, we certainly disagree that that was Mr. Wolf's intent. He was, in fact, trying to establish a rapport with Mr. Appell's attorneys. By calling the client a crook? Well, Your Honor, with due respect, he didn't call his client a crook. He didn't accuse Mr. Appell of having committed any criminal conduct or any wrongdoing. He didn't say that anybody else had committed any wrongdoing, and he didn't say that he— Mr. Appell had to be accused of security fraud, and then he named two other persons, two other persons, one a corporation and one another person, who, if you Google, were indicted for security fraud. Well, Your Honor, as to the applicability of the litigation privilege to a statement that one might perceive to have some improper intent, I would direct the court to the 1990 case of Silberg v. Anderson. That's the state Supreme Court case, really one of the seminal decisions interpreting the litigation privilege, in which it states— But, Your Honor, the misrepresentation had directly relevance to the litigation, because it misrepresented the value of the settlement offer. I agree. I was referring to a different case, actually, on Silberg v. Anderson, where the state Supreme Court stated that when applying the litigation privilege, it's really not a test of the speaker's motives or ethics or morals. It's really an objective test. As long as there was some furtherance of the objectives of the litigation, the statement is protected. And here, when you're a defendant in a lawsuit, or as Mr. Wolf was doing, representing a defendant in a lawsuit, the objective is to have the case dismissed and to have it dismissed without an adjudication of liability, which is why he was attempting to jumpstart settlement discussions with this email. I don't mean to cut off the court's question— Counsel, before you run out of time, Judge Dorsey, I believe, had some questions for you, as well. I'll pick them up on rebuttal. Thank you, Judge Graber. Did you wish to continue, or did you wish to save your time? If it pleases the court, I'll reserve the remainder of my time for rebuttal. You may do that. And we'll hear next from Mr. Brown. Good afternoon, Your Honors. The litigation privilege case that we have been discussing is quite clear. The Wynn case, it refers to the Silberg case, which Mr. Waller referred to. It specifically is consistent with the Silberg case. It talks about how the Silberg case changed the law to be more restrictive in favor of Mr. Appell's position here. And I'd agree with that. I would point out that in the Wynn case, page 148, answering Judge Graber's question, says, however, the privilege obviously cannot extend to anything that is written just because it's contained in a pre-litigation demand letter, a point which brings us back to the passage in Silberg, in which the two tenets regarding relationship of the statements to the litigation are fused into one. What is your response to counsel's argument that Wynn versus Proton pertains only to pre-litigation matters and not to post-litigation matters, such as a letter pertaining in part to settlement? I would point out two things, Your Honor. First, I don't find the word pre-litigation as being controlling in any way as it relates to how a statement to be within the privilege has to be within the case. But the more important thing I find is the record here shows that it was a pre-litigation statement. Because Mr. Wolf goes out of his way in his declaration to point out he had no relationship to this case. In the record, that is, the cross-appellant's excerpts of record, we have the declaration of Mr. Wolf. And at page 31, paragraph 9, in his efforts to support his no personal jurisdiction affirmative defense, he points out that he was only connected to California in an occasional email. He points out, I have never made any appearance in the district court action or any arbitration proceeding in California. But counsel, your complaint actually alleges specifically that Mr. Wolf is the functional attorney for concierge. And you say that he writes on behalf of concierge. So don't the allegations in your complaint contradict that theory? Well, A, I don't always agree with Mr. Wolf and what he says. But as far as pre-litigation and post, Your Honor, I would also point out the district court here pointed out specifically that these were not related to settlement discussions. Now, I realize we are de novo, but the district court said these were not settlement discussions because Mr. Wolf, in this same email, said he would never discuss settlement in an email. And further, going back to Judge Baya's point, Mr. Wolf refused to apologize twice or retract his statement when pointed out to him that it was not the wrong person. So this was not establishment. You don't establish rapport by refusing to withdraw a false statement that you made. That's not how you establish rapport. So this was not an attempt to establish rapport. This was exactly an attempt to cause dissent, false statements, malicious intent with counsel. So a little bit. And the underlying email subject line specifically mentions the Appell concierge dispute. Would you agree with me? Yes, Your Honor. Okay. And in your complaint, you assert that Wolf was essentially begging for a phone call discussion about possible settlement of Appell's case against concierge. Did I quote that correctly? Yes, Your Honor. Okay. Uh, is this not indicia that this email is about that case? It is about that case, but it goes back to exactly what Wynn says, which is the statement under examination has got something to do with the case. So your position is that we have to evaluate in clause by clause of every attorney communication to determine if that line or clause is specifically related to the litigation? Yes. If you're following California law, which you're obligated to do in this case, the Wynn case requires that, Your Honor. It's my law that supports your position that we have to parse each communication, each document, clause by clause. The silver case, which Mr. Wallen referred to, and every other subsequent to Wynn decision. We didn't cite, string cite all the subsequent Wynn cases, but Wynn remains good law and has been cited several times. So yes, that is the law of California. It's uncontested. Your Honor, to raise the point that I wanted to bring up today, the court may choose to tell me I shouldn't bring it up, but it's an important point, which is whether we should be here at all. Because you're talking about the examination of the merits of the case raises whether this case should be here under the collateral order doctrine. And I thought, perhaps wrongly, that since Judge Bale was one of the eight judges of the court who has now criticized the Ninth Circuit's decision on Betzel, and from my case and from others, and Judge Gould has said that he, as a member of the panel in Betzel, regrets his support for that case. Judge Gould has in Travelers v. Hirsch, he wrote a concurring opinion along with the other judge, so two of the three were concurring opinions, because he thinks he was wrong in Betzel. And we now have, as of the Second Circuit making the decision just recently in the case, sorry, we now have one, two, three, four, five, six circuits who say that Antislap does not belong in federal court, and the Ninth Circuit remains a standalone along with the first in saying that we even can be in federal court. Counsel, counsel, you're welcome to use your time any way you wish, but we can't any, as a three-judge panel, we aren't empowered to alter any precedential decisions of our court. Well, Judge River, I don't agree with you, what your authority is. I will point out that the Second Circuit now has a circuit split because the recent decision is directly contrary to an means. Well, they may, but in our court, a three-judge panel cannot overrule or disagree with any precedential Ninth Circuit opinion that has not itself been overruled or contradicted by the Supreme Court or an embanked decision. So, as I say, you're welcome to continue, but I'm not sure to what effect. And Judge Banz indicated, even though he knows what the issue is, having been a dissenter on the Keft case, I shouldn't, and so I won't, Your Honor, except to say that this panel could do a concurrence, as Judge Gould has done in the past, as Judge, sorry, I want to pronounce her name correctly, and I apologize. I have the spelling. Anyway, several judges of this court have at various times expressed concurrence, and if that's not what the court's interested in, I'll move on. We contend, Your Honor, that this case is, though, controlled by Winn. The California law, that's the only case, there is no contrary California authority. And unless this court finds that pre-litigation is different than during litigation for the ability to write something unrelated to the merits of the case, that's not under consideration in the case, that's false and frivolous and refusing to be withdrawn, then we would stand on the position that Winn says this does not fall within litigation privilege. And further, I would point out something far brief, and then I'll be almost done unless the court has questions for me, which is that under the second prong, because this case comes to the court on such an odd factual or legal background, there is a of record declaration by Mr. Wallen that they're not contesting our coming forward with evidence on the second prong of the test relevant to anti-SLAPP. As such, I don't see how, given that they have filed that declaration, there can be any argument about whether we have shown any evidence at all since they waived that issue below strategically for the purpose of avoiding the discovery, which this court said it would otherwise order. So it's not an accidental admission, it's not a pleading by failure to write, it's a willful declaration by Mr. Wallen personally as a strategic choice. And with that, I have nothing further unless the court has questions. I think I have one more question. Going back to this distinction that we have to look at your position, that we have to examine every attorney communication line by line, clause by clause, to determine whether each individual clause, for example, would be related to the objects of the litigation. How do we draw that line? Certainly not every sentence, not every clause in every settlement-related letter is going to be specifically related to the litigation or an issue in the litigation. There might be sort of lead-up sentences or sentences that truly don't specifically relate to that. Aren't we opening up the floodgates to litigation if we parse it so carefully like this and we apply the rule that you're saying, a 1999 case from a California court of appeals, a single case? Well, your honor, just to be clear, I did say Silbert, which is the California Supreme Court, and all the progeny thereafter said in our brief. But let me go back to your direct question, your honor, because it's very good and it points out I made a mistake in how I explained it. There's only one sentence you need to parse in the entire string. The one that says, I know your client from securities fraud. The question is only, is that related to the case? There's no other parsing. There's no other looking. The question is, is your client is a securities fraud-related individual? Related or not? And that's what the Lynn case talks about. So I apologize if I made it sound as if we have to examine every letter. It's just the libelous statement. Is the libelous statement relevant or controlling in the case itself? And that is exactly what Lynn says. And I apologize, your honor, for being- So that's your rule, relevant or controlling in the case. What does that mean? Let me find a correct, a quote from Lynn and make sure I get it just right. Younger v. Solomon, which was cited by Wynn with approval, has a one-sentence definition. To come within the privilege, the fact community itself must have some bearing on or connection with the subject matter of the litigation. And that is Younger v. Solomon, cited within Wynn. So if I understand your position correctly, if this were an action relating to securities fraud and someone said, and we think this isn't the first time, we think he's done it before, and therefore we're going to have a very different view of settlement, that would be privileged, even though it may be otherwise defamatory. Whereas, to go back to my example, we'll kick in for the settlement, and by the way, your relative, who's a counterfeiter, wouldn't. Is that a fair summary of your position? Uh, I would say that it is, except that it would have to be in a relevant context, which I don't concede the context, but let me suggest one more sentence, if I could, from the Wynn case at page 150, which brings the whole thing together, where it says, we think these cases, and several earlier, establish an important point for litigants and attorneys concerning pre-litigation demands and the like. Notice the word and the like, so the pre is not controlling. That point is that section 47b does not prop the bar door wide open for any and every sort of pre-litigation charge or innuendo, especially concerning individuals. And so, your honor, I would submit that as a charge against an individual, what the court is saying is that that should be examined, and that should not be given free reign, that's not part of the bar door open. That would be a better summary of my position, your honor. Thank you. Thank you to the court. Mr. Rollin, you have some rebuttal time remaining. Yes, thank you, your honors. Just to briefly address, Nguyen stated that the underlying communication was made in a pre-litigation setting. That's false. The emails themselves make clear that litigation was pending at the time, as does Mr. Appell's complaint. As to Nguyen, just to read a couple sentences from the opinion itself, the very first sentence states, this appeal presents the interesting issue of the privilege, protects statements made in pre-civil litigation demand letters. That first paragraph goes on to state that reasonable limits should and do exist on the type and character of pre-litigation statements, which are protected by the privilege. Certainly, the court that wrote that opinion saw that distinction as very critical. It's called out twice in the first paragraph of that opinion. That is why Nguyen is not controlling here. There are a few other points in counsel's remarks that I will address if time permits, but I believe I had a question that you wanted to pose. If the Nguyen case is controlling, can we determine that the district court erred in denying your anti-SLAPP motion? Yes, absolutely. How? This anti-SLAPP motion could be granted on a few different bases. Even if the litigation privilege is deemed not to attach to Mr. Wolf's email, which of course we contend it should, Mr. Wolf should nonetheless prevail on the second prong on the grounds that the statement in question is not defamatory. There are really two absolute bars to recovery, cognizable on the face of Mr. Rappel's complaint, either of which is sufficient to sustain the motion. Your friend in opposition says that you waived that issue. Right, that's incorrect, your honor. It's a clear misconstruction of the declaration we filed with the district court. The magistrate, Judge Skomal, in deciding a request for discovery put forth by Mr. Rappel, asked Mr. Wolf to clarify the basis of the anti-SLAPP motion, where it fits within the taxonomy established by the Planned Parenthood case, whether it should be a 126 standard or counsel for Wolf to clarify whether we were requiring Mr. Rappel to present evidence. We filed a declaration stating only that he did not have a burden to produce evidence on the second prong, not that we were waiving the second prong entirely. That's pretty clear from the declaration itself, which you can find in Mr. Rappel's excerpts of record, pages 48 and 49. It's your position that the statement made doesn't clearly insinuate that V. Howard Rappel was a securities fraud crook, because it doesn't say that. It just says he had issues on securities fraud with other people who were indicted. Yeah, well, that is our position, and I think the controlling case here is the 2017 California Court of Appeal case of Charney versus Standard General which involved a press release stating that a CEO had been dismissed following an investigation into allegations, and the California Court of Appeal rejected the defamation case there, saying there was no clear accusation of misconduct. Thank you, counsel. I'm sorry, did you have another question, Judge Beyer? No, I'm fine. Okay, thank you. The case just argued then is submitted for decision, and we appreciate very much the arguments from both counsel.
judges: Graber, Bea, Dorsey